May it please the Court. Good morning, Your Honors. My name is Dena Meyer-Henry, and I represent the appellant Antonio Harris. Mr. Harris was denied his right to present his defense because a statement was used that was not his statement, not a court-redacted statement, but a statement that was manufactured by police to get around to Bruton problems. The lower court's decision was unreasonable because the State courts didn't consider the origin of this statement. This is not a case where Mr. Harris made a statement, the trial judge sat down and redacted that statement, and made a reasoned determination about the remainder of the statement and whether that statement could be presented or whether the trial would have to be severed from that of his co-defendant. So as I understand, your actual claim is that there should have been a severance, not that I didn't understand you to be claiming that it was error to put in the third statement. I thought your claim was that the trial should have been severed so the other two statements could also have come in. Am I missing something? No, Your Honor. But the reason that the trial should have been severed and the other two statements should have been considered is that that third statement should never have existed. Well, I guess the one issue I have with your – maybe it's not the only issue, but I'm concerned about prejudice, because the first statement and the second statement are not consistent with each other. And the second one is really basically consistent with the third one. So, you know, I'm not sure how it ultimately would have made a difference to your client. Well, the second statement, I agree with the Court in terms of the inconsistencies in the statements, and probably the second statement would have been the one that would have been admitted. The second statement is the one that makes many references to the co-defendant, and those references would have to be redacted. But even after those were redacted, the statement includes explanation that was not permitted in the third statement. Except that we're back to aiding and abetting. The second statement, as I recall, does concede that your client knew that they were going to be a robbery and that he was going to benefit from it financially. That's true, Your Honor. So regardless of the extra detail, how could the trial have come out differently? Well, Your Honor, we're not here arguing about the robbery and the felony murder. We're effectively arguing about whether or not the special circumstance of robbery would apply. In order to show the special circumstance, there has to be a determination that he was a major participant, but also that he exhibited a disregard for human life. And it's relevant to that determination that the jury would have heard his statement that he did not know that a gun was going to be used in this robbery. So that by itself --" I mean, in essence, be the wheelman to drive the robber to the scene of the robbery, knowing that they were going to conduct a robbery, that robbery is an inherently dangerous endeavor, and that harm is likely to befall whether you know that the robber that you're carrying to the scene of the crime is armed or not. Why is that an unreasonable determination under AEDPA? Also in the second statement is a discussion of what Lockhart was going to do, which sounds like he was going to intimidate him. He wasn't --" there was no discussion of weapons. There was no discussion about physically harming him. But even a strong armed robbery can result in harm if the victim resists. You know, you could push him to the curb and the victim's head could hit the concrete and you could kill him that way. I mean, I think that's how I read the State Court of Appeals decision. Yes, but what's important is what was in Harris's mind. And that is what the jury did not get to hear. But, you know, the other difficulty, I think, for your client in terms of the analysis to me, and I find this really a difficult case, but I'm --" if the jury had both the first and second statements, they would have had to conclude that your client was a liar because first and second statements were not at all consistent with each other on some of the crucial details, like whether he drove him to the robbery and, I mean, on some of the basic facts. And if that's the case, why do you think the jury would have believed that he wasn't aware of the gun? I mean, he's progressively acknowledging more and more involvement, and they wouldn't have had to believe him. Well, Your Honor, the analysis at the trial level would have been different had the third statement, the manufactured statement, not existed. The Court would have had to consider those two statements in isolation. So determinations would have had to have been made almost line by line. So you're saying that if he'd been tried alone, there's the Court would have had to exclude the third statement? I'm saying, Your Honor, is that the third statement was not Harris's statement. It was something that was manufactured by police. Well, it was his statement. He said things. So it was his statement. I mean, he was – it was a dialogue, but it wasn't somebody else's dialogue. He was one of the people speaking. It was a very restricted dialogue. He was ordered to answer yes or no to a series of questions, which were designed to eliminate. Well, he could have answered no. He could have said no to the crucial question if the answer was no. But it was also designed to remove his ability to explain any of the statements that he was making. Those explanations were in the second statement. But the problem is that if you'd been granted a severance, those statements would have come in in completely unredacted form because you wouldn't have had a Bruton problem. Right. And if that's the case, then as Graber was pointing out, that second statement really hurts your client. And the court of appeals found, I think, for that reason, that there was no prejudice here because they help or harm rather than hurt the defense. Well, as in most cases when you have statements of a defendant, they are a mixed bag. I agree that they both harm and help. But the jury should have been able to hear those portions, which explain. What do we do with the fact that trial counsel was given the opportunity by the superior court judge to offer redacted versions of the first and second statement but never did so? Well, the court determined that the third statement was the one that was going to come into evidence. And trial counsel did later try to cross-examine Officer Medeiros regarding the second statement. Counsel, I don't think you're answering my question. Didn't the trial judge say at the time he ruled on the motion to sever that if that third statement came in, that he would entertain a motion from the defendant to introduce redacted versions, but show me what it is that you want to introduce? Did I misread the record? No, Your Honor. And I don't believe you're right that that was formally done. It never happened. But there was an effort to cross-examine the officer regarding the statements, which was shut down by the prosecution. So in light of the fact that it didn't happen, is this claim waived? Based on the attempt to cross-examine, I don't believe it is. Was the – does it matter at all, in terms of my looking at what the difference was between the second and third statement in a way that would matter, does it matter whether, in terms of the reckless disregard, that he left the scene of a dying man, which was stressed, I gather, which would have been, I guess, more clear with regard to the second statement? It does matter. But also from that statement, Lockhart said he popped the guy, which Harris could easily have interpreted to believe that the guy was already dead and there was nothing he could do to help him. But also Lockhart got back into Harris's car with a gun in his hand. Mr. Harris could easily have feared that he would be next. I thought there was testimony that Harris was – actually got out of the car and was standing next to the victim of the car looking in. Didn't one of the neighbor witnesses tell the police that? Yes, Your Honor. That was Mr. Enzor. I don't remember his name exactly. He testified under extreme fear of the co-defendant. And he placed the two men in reverse positions from every other witness. So it's difficult to determine what weight the jury gave to that testimony. The client admitted to the Oakland police that he got out of the car. But not that he was standing next to the victim's car. Your Honor, I've reached the end. Yeah, you have reached the end, but we'll give you a minute for rebuttal also. Thank you. Thank you. We'll hear from the State. May it please the Court, my understanding of the issue in this case is whether the exclusion of the first two statements denied Harris due process. Let me tell you what my issue is from your side of the case. It seems to me that at least the – leaving aside that the first and second statements are inconsistent with each other, which causes its own problems, if the – if the person was already dead before Mr. Harris realized that there was again, and I know you don't agree that that's the case, but assuming that, would he be criminally liable for reckless disregard? In other words, we have statements in cases like Pulido that once a person is already dead, and that's where your participation comes in, you can't be in reckless disregard of human life that's already been taken. So I wonder whether it would have potentially had an effect on that determination. As I understand the evidence in this case, there was none that Harris knew that the victim was dead. All that he knew was that he heard gunshots, and that when – as far as the first and second statements go, that when Lockhart came back to the car, he had a gun and money, and he said that he popped the dude. That is not conclusive evidence that Harris knew that the guy was already dead. In fact, I'm not sure if the victim was already dead. I can't remember. But I don't see that there was any evidence that he did, in fact, know that. I don't think that that's a concern here as far as the reckless disregard. That he knew what? I'm sorry. That he knew the victim was dead and there was nothing he could do. There was no evidence of that. Which side was the door open and the victim's leg sticking out of the car? I believe it was the passenger side, but I'm not – I cannot quite remember. So I'm going to have to say I'm not sure. So I guess what you're arguing, if I understand it correctly, is that the evidence even taken most favorably to the petitioner here would not suggest that the participation in the robbery was all post-killing. Because even though the guy had been shot, he might well have been alive. And so just getting in the car and taking off was already a form of reckless disregard. Is that your argument? Yeah, I think so. I think that what Harris is focusing on here is exclusively his knowledge of a gun before the robbery. But what he's failing to take into account is that he knew he was going to the scene of a robbery, that he was transporting the robber to the robbery. In fact, the second statement he said he was going to make money for it. And so there's that. And then also Harris is also disregarding his knowledge and actions after the shooting, which is that he knew someone got shot and that he then transported the  And so he's not taking any of that information away from that scene without even trying to determine if there was something that could be done for that victim. So does every – I mean, that's sort of where I got myself, that everything turns on that. Because in his second statement, he said, for example, that he promised nothing was going to happen, nothing serious. And it wasn't just that he didn't know, but that he had been promised that nothing was going to happen. And there – which – none of which is in the third statement. So the only way that it could not matter is if the fact that he could have left a dying man would be, A, is that implied in the second statement, and, B, is that enough to convict him under California law? Yes. It's enough to convict him. But I also have sort of an argument just with respect to the knowledge itself, which is that it wasn't critical or essential to present the defense at trial because there was no evidence suggesting that Harris knew there was a gun. And, in fact, defense counsel was able to argue that – Isn't there a difference between I didn't know there was a gun and I was promised nothing serious was going to happen? I didn't know. Can you say – I'm sorry. Say that one more time. Isn't there a difference between I didn't – no evidence that I knew there was a gun and I knew there wasn't a gun. I was told nothing serious was going to happen. Sure. But does it matter as far as the defense that they were able to present? I would say no. Why? Because they were able to actually – to argue that from the lack of evidence. They could argue it, but they didn't have any facts. But it didn't – but it didn't – and then we go back to sort of the other point, which is it didn't affect the complete defense here because we have this evidence that he acted as a major participant, which is undisputed, and that he transported the robber from the scene after knowing that somebody had been shot. And I will also point out that this third statement is the best one for Harris in terms of it doesn't make any mention that he transported the robber to and from the scene. There's nothing in there about he was going to get paid for his participation. So the thing is, with the first two statements, there were a lot of – that they were mostly incriminating. And I think taken as a whole, can we say they were exculpatory? No. Why aren't they exculpatory with regard to his reckless disregard? Leaving – are they exculpatory and more exculpatory with regard to their reckless disregard if you leave out this factor of there was – he left a dying man? No. I would say no. Why not? Because all he said was that he didn't know Lockhart had a gun, but he did know they were going to a robbery. And in fact, they had a conversation in which Lockhart assured him he wouldn't hurt the victim. He was just going to take his drugs and money. He knew he was going to a robbery of a drug dealer. And he didn't – And that's sufficient for reckless disregard of life if he's told? I think so. And nothing serious is going to happen? Yes. I think so. You know, he didn't take – he didn't go to the next step and say – he didn't ask if he had a gun either. I mean, he says he didn't know, but did they have a conversation about a gun? There's none of that in there. There is – he does say that the planned robbery was of somebody who knew his cohort, Lockhart. Right. So I suppose those enter into the mix in some way, potentially. Right. And there was a lot of other evidence that Lockhart was the mastermind behind the scheme and that he had a great motive for wanting the victim dead. And then there was also the evidence that Mr. Savage, who said that Harris was the shooter and Lockhart stayed in the car, that he was very scared of possibly lying about each person's role in the robbery and murder. And so there was that evidence that the defense could also argue. Unless there are any further questions, I'm prepared to submit the matter. I think there aren't. Thank you very much. I'm going to give you a minute for rebuttal. I think what was denied Mr. Harris is the right to present those statements that the Court is asking about. The assurance that nothing serious was going to happen. The fact that Lockhart knew this victim. So those – and the fact that Mr. Harris didn't know that there was a gun. And those statements, at least if believed by the jury, give rise to reasonable doubt as to the reckless disregard as it applies to the special circumstance of robbery. But how does that help him if the evidence is that after he heard the shots, he got out of the car, he saw, obviously knew that the victim had been shot, and then they both got in the car and he drove the shooter away from the scene? It seems to me that's the evidence that is so damning as to the enhancement. Well, it certainly is evidence to support the robbery. It certainly is evidence to support the murder. But if the man appeared to him to be already dead, which the jury could believe, then driving the shooter away is not by itself reckless disregard. But how could he know that the man was dead? By your view of the facts, he never got close enough to the vehicle to see. All he knew was shots had been fired. In the second statement, it said, Lockhart said, I popped the dude. He also saw him slumped over in the car. So – Doesn't pop mean I shot him? Am I misunderstanding? Pop means I shot him. It doesn't mean he's dead. It's open to interpretation in terms of how the term is used on the street. But it could very well mean – How could Lockhart even have known if he was dead? The point is that there was evidence available to at least undermine the enhancement – it's not enhancement, it's special circumstance. And that evidence should have been presented to the jury, at least for their consideration, whether they would have believed it or not. They should have been allowed to consider it. And it was because that third statement insisted that they couldn't. Thank you, counsel. Thank you. The case just argued is submitted. We appreciate both counsel's arguments.
judges: Graber, Berzon, Tallman